IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis Verhoff                                                    3:05CV7277

      Plaintiff,

  v.                                                                    ORDER

Time Warner Cable, Inc.

      Defendant.


This is a suit by Dennis Verhoff, against his former employer, Time Warner Cable, Inc. ("Time Warner"). Plaintiff, who suffers from severe eczema, a chronic skin condition, claims that Time Warner violated federal and state law by not accommodating his condition and by retaliating against him for asserting his rights. He claims that Time Warner violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, *et seq*.; an equivalent state statute, O.R.C. §4112.99; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et seq*., through both interference with his statutory rights as well as retaliation for his assertion of such rights.

Defendant moved for summary judgment on all of the plaintiff's claims. Plaintiff countered by moving for summary judgment as to defendant's liability for interference under the FMLA. For reasons that follow, plaintiff's motion shall be granted and defendant's motion shall be granted in part and denied in part.

**Background**

Plaintiff worked for Time Warner performing installations and personal computer support from 2000 to 2004. During this time, he suffered from eczema, a skin disease which he claims

presented serious difficulty both inside and outside of work. Verhoff claims that, due to his condition, he was unable to handle long hours at work since he required a certain amount of recovery time between shifts.

Throughout plaintiff's employment with Time Warner, the company required its installers periodically to work overtime on a "standby" basis. When working on standby, an employee would have to handle after-hours service calls. Being able to respond to such calls was important to the company and its customers.

Time Warner informally accommodated plaintiff's inability to work overtime during his first couple of years with the company by allowing him to give some of his "standby" shifts to other individuals and thus avoid working overtime. This changed, however, after March 23, 2004, when plaintiff presented a doctor's note to his supervisor, Kevin Young, formally restricting plaintiff to forty hours of work per week. Other individuals in Time Warner, including members of its human resources department and plaintiff's manager, James Gerhard, also received a copy of the doctor's note.

On April 21, 2004, plaintiff met with Gerhard, who told him that working overtime was an essential aspect of plaintiff's job. On that same day, an agent for Time Warner cleaned out Verhoff's company vehicle, drove plaintiff home, and indicated that he was on leave.

On April 23, 2004, Gerhard told plaintiff that the "bottom line" was that plaintiff would need a full release from his doctor or he could not continue in his current position. On April 30, plaintiff submitted a formal FMLA request form. He checked the space for requesting block leave rather than the space for an intermittent/reduced work schedule leave.

Defendant granted plaintiff's request for block leave. Once plaintiff exhausted his block leave he continued to insist that his work week be limited to forty hours. Unwilling to grant this

request in light of its policy that installers have to work standby, the company terminated the plaintiff.

## Discussion

### 1. Claims Under the ADA and O.R.C. §4112.99

To establish a prima facie case for disability discrimination under the ADA, a plaintiff must prove that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004)).[1]

The first element - that the plaintiff be disabled - requires that the plaintiff not only be physically impaired, but that the impairment "substantially limit" a "major life activity." *Id.*[2] "Substantially limited," according to EEOC regulations, means "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 CFR § 1630.2(j) (2006). When assessing whether someone's condition substantially limits a major life activity, a court should also consider "the nature and severity of the impairment; the duration or expected duration of the

---

[1] Employment discrimination claims under O.R.C. § 4112 are "analyzed under criteria similar to Title I claims." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001).

[2] The Ohio statute, O.R.C.§4112.99, tracks the ADA for this element and also requires that those seeking relief show a substantial limitation on a "major life activity." O.R.C. §4112.01(A)(13) (2006).

impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 CFR § § 1630.2(j)(2)(i)-(iii).

Plaintiff alleges his eczema has substantially limited several major life activities, including sleeping, working, walking, caring for himself, performing manual tasks, and engaging in mental/emotional processes such as thinking, concentrating and interacting with others.

For reasons that follow, plaintiff's claims under the ADA and O.R.C. §4112.99 will be dismissed.

### A. Sleeping

Plaintiff claims that he was only able to sleep four to five hours without medication, and up to seven hours with medication. Further, he claims that when sleeping without medication, he would wake every thirty to sixty minutes throughout the night. He has not stated whether his sleep was uninterrupted with medication, but he has stated that sleep even with medication was "not restful" due to side effects.

Defendant claims that plaintiff experiences enough sleep per night so that his sleep is not so substantially limited as to make him disabled. Plaintiff counters by saying that it is not only the duration, but the manner and condition of sleep (particularly the periodic interruptions of sleep) which combine to substantially limit his ability to be adequately rested.

Courts addressing the issue directly have held that sleeping is a "major life activity" under the ADA. *See EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352-53 (4th Cir. 2001); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1989); *see also Cartwright v. Lockheed Martin Util. Servs.*, No. 00-6671, WL 1461753, at *4-5 (6th Cir. July 3, 2002) (noting agreement among several circuits on the issue). When inquiring into whether one has a disability under the ADA, it is proper to evaluate the "nature and severity of

the impairment" purportedly limiting the major life activity. *See Boerst v. General Mills Operations*, No. 00-3281, WL 59637, at *3 (6th Cir. Jan. 15, 2002).

The Sixth Circuit has, however, held that sleep is not substantially limited with sleeping only two to four hours a night, because such a predicament "simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Id.* at *4.

Plaintiff alleges that it is not just the lack of sleep, but the condition which leaves him unrested on a regular basis – namely, the aggravating and discomforting effects of his eczema – that distinguish his situation from that of the plaintiff in *Boerst*. Nonetheless, regardless of what causes insufficient sleep and rest, his situation is like that of other plaintiffs who have not been found disabled due to a lack of adequate sleep. *Swanson*, 268 F.3d at 314; *Boerst*, WL 59637 at *4. Plaintiff, as a matter of law in light of these decisions, is not "substantially impaired" from a chronic lack of sleep.

Plaintiff, moreover, acknowledges that medication has helped him to get up to seven hours sleep per night. That he is able to treat his sleeping difficulties to that extent is a further indication that a major life activity is not substantially impaired. *See Swanson*, 268 F.3d at 314; *Boerst*, WL 59637, at *3.

### B. Working

Plaintiff contends that he is also substantially limited by his eczema in his ability to work and is thereby disabled. Plaintiff explains that, due to his eczema, he can only work forty hours per week, and during those forty hours he experiences serious skin irritation and pain.

Although the Supreme Court has previously declined to rule whether "working" qualifies as a "major life activity" under the ADA, *Toyota Motor*, 534 U.S. at 200, there are standards for

judging whether someone is substantially limited in his ability to work. Applying the EEOC Regulations, the claimant must show that he is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (citing 29 C.F.R. §1630.2(j)(3)(i)). Even if plaintiff is unable to work at his former job with Time Warner, which sometimes demands more than forty hours per week, he has not shown he is unable to work in a class or broad range of jobs as compared to the average person with comparable training, skills and abilities.[3]

In that regard, plaintiff's situation is like that of the plaintiff in *Doren v. Battle Creek Health System*, 187 F.3d 595 (6th Cir. 1999). In that case the plaintiff claimed she could not work more than eight consecutive hours. The employer required her to work twelve-hour shifts. Like the plaintiff here, the plaintiff in *Doren* did not show that she was unable to perform a broad range of jobs. The Sixth Circuit held that the plaintiff had failed to make a prima facie showing that she was disabled under the ADA. *Id.* at 599.

Plaintiff attempts to distinguish *Doren* by arguing that, unlike the plaintiff in *Doren*, the "condition and manner" in which he works is affected by his medical status. Plaintiff, however, overlooks the fact that the court in *Doren* explicitly acknowledged that the plaintiff experienced "joint pain, swelling, and fatigue." *Id*. There is no significant difference between *Doren* and the present case for the purposes of assessing whether there is a substantial limitation on plaintiff's ability to work.

### C. Walking

---

[3] Because plaintiff is not substantially limited in his ability to work, this opinion does not attempt to resolve the issue of whether working constitutes a "major life activity."

Plaintiff claims that he is substantially limited in his ability to walk. Occasionally, plaintiff experiences symptoms from his eczema where he is unable to wear shoes or socks and he claims it is "difficult to walk."

Plaintiff has not alleged that he cannot walk; he claims, rather, that it is "difficult" to do so when his eczema is "really bad on [his] feet." In addition, plaintiff has not alleged that he frequently experiences walking difficulties.

Plaintiff has failed to present evidence that his walking is significantly restricted as to the "condition, manner or duration" as compared to the average person in the general population. Thus, the effect of his eczema on his ability to walk is not disabling.

### D. Caring for Oneself

Plaintiff alleges that his ability to care for himself is substantially limited by his eczema. He acknowledges that he can shower and dress, though sometimes pain and itching cause him to take more time doing so. For instance, because he is sensitive to water, he needs about an hour to recover from a shower and therefore only takes a limited number of showers per week. Plaintiff also claims he is completely unable to clean his house.

Plaintiff has failed to show that his ability to care for himself is significantly restricted in "condition, manner or duration" as compared to the average person in the general population. He can shower and dress, albeit with complications that do not, however, constitute substantial limitations. *See*, *e.g.*, *Cantrell v. Nashville Electronic Serv.*, No. 97-5839, WL 68571, at *3 (6th Cir. Jan. 21, 1999) (denying ADA claim where plaintiff alleged that his wife would have to fasten his pants for him before he dressed). And although he is unable to clean his house, plaintiff's wife does most of the household cleaning. Therefore there is no substantial limitation on plaintiff's ability to care for himself.

### E. Performing Manual Tasks

Plaintiff claims he is substantially limited in his ability to perform manual tasks, such as playing with his children on the floor or outside. Plaintiff also asserts that he avoids strenuous exercise that would make him sweat.

In *Toyota Motor*, 534 U.S. at 202, in which the plaintiff claimed she was disabled under the ADA due to her inability to perform manual tasks, the record indicated that "her medical condition caused her to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances." The Court held that "these changes in her life did not amount to such severe restriction in the activities that are of central importance to most people daily lives that they establish a manual task disability as a matter of law." *Id.* Other cases have likewise held that complications which attend manual tasks, or the inability to perform less important manual tasks, do not qualify as substantial limitations on someone's ability to perform manual tasks. *See*, *e.g.*, *Gerton v. Verizon S., Inc.*, No. 03-6674, WL 1994313, at *6 (6th Cir. Aug. 18, 2005).

In light of these decisions, plaintiff's inability to perform manual tasks does not cause him to be disabled under the ADA.

### F. Engaging in Mental/Emotional Processes

Plaintiff claims that he was substantially limited in his mental and/or emotional processes due to his eczema. He claims that his ability to concentrate is diminished from lack of sleep and the side effects of antidepressants taken to relieve the effects of eczema. There medications, he states, do "bad" things to him.

Plaintiff avoids social interaction due to embarrassment about his eczema. In addition, he experiences a short attention span because, instead of thinking about a conversation he is in, he is thinking "about [himself] and [his] skin."

While "learning" is mentioned as an example of a major life activity by the Regulations, *Mulholland v. Pharmacia & Upjohn, Inc.*, No. 01-1325, WL 31681919, at *3 (6th Cir. Nov. 22, 2002) (citing 29 C.F.R. §1630.2(i)), it is also true that "sitting and thinking," *Hill v. Metro. Gov't of Nashville*, No. 02-5305, WL 31863829, at *2 (6th Cir. Dec. 17, 2002), or "concentrating," *Boerst*, WL 59637, at *3, are not a major life activities. A panel of the Sixth Circuit has suggested, however, that "interacting with others" might constitute a major life activity. *See MX Group, Inc. v. City of Covington*, 293 F.3d 326, 337 (6th Cir. 2002).

Plaintiff has not shown a triable issue of fact that his diminished mental and/or emotional processes constitute significant departures from the types of mental or emotional challenges faced by the average person.

### 2. FMLA Claims

Plaintiff has asserted claims for both interference and retaliation under the FMLA. The statute provides that an employee is entitled to medical leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Such leave "is not unconditional," and to "garner its benefit, an employee must abide by the conditions provided" in the statute. *Killian v. Yoruzu Automotive Tennessee, Inc.*, 454 F.3d 549, 554 (6th Cir. 2006).

#### A. Interference

Plaintiff claims that Time Warner should have understood that his original doctor's restriction to a forty hour week constituted a request for intermittent leave. Not having done so, he asserts, Time

Warner mislead him into foregoing his right to such leave and thereby compelled him into requesting, instead of intermittent leave, only block leave. This, plaintiff contends, interfered with his right to intermittent leave under the FMLA.

To prevail on an FMLA interference claim, the plaintiff must show that "1) he was an eligible employee; 2) the defendant was an employer as defined under the FMLA; 3) the employee was entitled to leave under the FMLA; 4) the employee gave the employer notice of his intention to take leave; and 5) the employer denied the employee FMLA benefits to which he was entitled." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). An eligible employee is entitled to block leave, but he is also entitled to intermittent leave or a reduced leave schedule if medically necessary. 29 U.S.C. §2612(b)(1).

Defendant claims that, by granting block leave to plaintiff as he requested, it did not "den[y] the employee FMLA benefits to which he was entitled." *Walton*, 424 F.3d at 485. Plaintiff asserts that, instead of the block leave he received, he should have been given intermittent leave. Had such leave been provided, he contends, his schedule could have been adjusted to enable him to work no more than forty hours per week.

When defendant received the doctor's note from plaintiff in March, 2004, it was on notice that, due to his medical condition, plaintiff was requesting a reduced work schedule. At that point, the FMLA required defendant to grant plaintiff's request if all statutory prerequisites were fulfilled.[4]

---

[4]

Defendant does not appear to contest that the March, 2004 doctor's note constituted proper notice to it that plaintiff was seeking FMLA leave. Even if it were contending that the note did not constitute such request, its challenge would not succeed.

An employee seeking FMLA leave need not cite specific sections of the code or even mention the statute. *See Walton*, 424 F.3d at 486. The employee must, however, "give the employer enough information for the employer to reasonably conclude that an event described in FMLA § [2612(a)(1)(D)] has occurred." *Id.* (citations omitted).

Gerhard's statement to the plaintiff on April 23, 2004 (before plaintiff had submitted his formal FMLA form), that plaintiff could not return without a full release from his doctor, constituted a "deni[al] [of] the [] FMLA benefits to which he was entitled." That the defendant, later granted plaintiff block leave is immaterial to whether it initially interfered with plaintiff's FMLA rights when it did not respond to the original note, in light of its knowledge of plaintiff's condition, with an offer of intermittent leave.[5]

Plaintiff is, accordingly, entitled to summary judgment on his claim of interference with his FMLA rights.

### B. Retaliation

Plaintiff claims that he was terminated for trying to assert his rights to a reduced leave schedule under the FMLA. Defendant asserts that once plaintiff used his maximum allotment of FMLA leave, it was not legally obligated to provide a reduced leave schedule.

---

In this case, defendant knew, even before receiving the doctor's note, that Verhoff had a chronic condition, as he had provided medical information to a Time Warner supervisor as early as 2002. Thereafter, his doctor's note, as other courts have held, put Time Warner on notice that he intended to take leave to which he was statutorily entitled. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 423-24 (6th Cir. 2004) (doctor's note might provide sufficient notice if delivered in a reasonable time frame); *Plant v. Morton Int'l*, 212 F.3d 929, 935 (6th Cir. 2000) (finding employee provided valid notice to employer when employee submitted a doctor's note and employer knew about prior health problems).

The situation here can be distinguished from cases where notice was held to be defective such as *Walton*, 424 F.3d at 486, where the plaintiff did not submit documentation from his doctor until nearly two weeks after being terminated, or *Golevski v. Home Depot U.S.A., Inc.*, Nos. 04-1221, 04-1228, WL 1413099, at *6 (6th Cir. June 6, 2005), where the plaintiff was repeatedly asked to fill out certain required forms for medical leave but ignored those requests.

5

The subsequent granting of such benefits may be pertinent to damages and/or a suitable remedy, which is not a subject of the plaintiff's motion. The determination of damages will also be informed by the issue, discussed in the parties' briefs, of whether Verhoff was properly informed of his rights before requesting block FMLA leave.

To present a prima facie FMLA retaliation claim, the plaintiff must show that 1) he availed himself of a protected right under the FMLA; 2) he was adversely affected by an employment decision; and 3) there was a causal connection between the two actions. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Plaintiff does not contest that he was granted the full twelve weeks of FMLA block leave required by § 2612. Thereafter, plaintiff had no right to additional leave for that year under the statute. *Id*. While he may have a claim, as recognized *supra*, for failure to have advised him of and granted intermittent leave, he was not entitled, at the time of his post-leave request, for further leave. Thus, in making that request, he was not availing himself of a protected right under the FMLA. Thus, any action thereafter by the defendant could not have been undertaken for his having availed himself of his rights under the FMLA.

The defendant is, accordingly, entitled to summary judgment as to plaintiff's FMLA retaliation claim.

## Conclusion

It is, therefore,

ORDERED THAT

1. Defendant's motion for summary judgment be, and the same hereby is:

    a. Granted with respect to plaintiff's First Cause of Action (for violations of the Americans with Disabilities Act);

    b. Granted with respect to plaintiff's Second Cause of Action (for violations of O.R.C. Chapter 4112);

    c. Granted with respect to plaintiff's Third Cause of Action (for retaliation in violation of the Family and Medical Leave Act); and

       c. Denied with respect to plaintiff's Fourth Cause of Action (for interference with plaintiff's rights under the Family and Medical Leave Act); and

2. Plaintiff's motion for partial summary judgment be, and the same hereby is granted with respect to defendant's liability under plaintiff's Fourth Cause of Action (for interference with plaintiff's rights under the Family and Medical Leave Act).

So ordered.

                                              s/James G. Carr
                                              James G. Carr
                                              Chief Judge