IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis Verhoff,                                                      Case No. 3:05CV7277

        Plaintiff

v.                                                                ORDER

Time Warner Cable, Inc.,

        Defendant

      This is a suit by a former employee, Dennis Verhoff, against his employer, Time Warner Cable, Inc. Verhoff is afflicted with a chronic skin condition that, according to his treating physician, Dr. David Woodruff, limits his work as a service technician to forty hours per week. Plaintiff's complaint alleged, *inter alia*, that Time Warner failed to afford him rights under the Family Medical Leave Act [FMLA], 29 U.S.C. § 2601 et seq.

      The parties submitted counter-motions for summary judgment. I granted defendant's motion in part, and granted plaintiff's motion in part, finding that Time Warner's failure to give the plaintiff

intermittent leave had violated the FMLA.[1] *Verhoff v. Time Warner Cable, Inc.*, 2006 WL 3304179 (N.D. Ohio).

On grant of that motion in favor of plaintiff on the issue of liability, the case remained set for trial on the issue of damages and other relief. On November 20, 2006 a settlement conference took place. Negotiations during that conference led to an agreement that Time Warner would let the plaintiff return to work on the following Monday, November 27, 2006, and to would abide by the forty hour/week restriction on plaintiff's working hours. By doing so, the defendant acquiesced in my decision that it had violated the plaintiff's FMLA rights.[2]

The issue of the monetary damages resulting from plaintiff's termination remained, however, in dispute and to be tried. A previously set December 5, 2006, trial date was vacated to enable briefing of various pending damages-related motions.

On January 9, 2007 – more than a month after defendant's agreement to permit plaintiff to return to work – Time Warner filed its first version of a motion under Fed. R. Civ. P. 60(b). That

---

[1] The defendant had granted plaintiff a period of "block" leave under the FMLA. When plaintiff returned from that leave, the company fired him because he still could not work more than forty hours per week.

There is no dispute that the company must respond to customer service calls "24/7." To meet this need, the company requires service technicians periodically to work more than forty hours per week. For the first couple of years of plaintiff's employment, the company had accommodated plaintiff's restriction to a forty-hour week by excusing him informally from the overtime requirement. Its decision no longer to continue doing so, and to make him periodically cover after-hours service calls, led, ultimately, to this suit.

[2] The parties incorporated their agreement into an Agreed Order filed December 6, 2006, whereby, *inter alia*, the plaintiff was: the "prevailing party" with regard to his FMLA interference claim; to be reinstated on November 27th to his former position; and to be paid back pay and benefits in the amount of $15,633.29, less applicable deductions, covering the period May 7, 2004 to September 30, 2004. [Doc. 75].

motion, as presented in the "corrected" version asserts: 1) newly discovered evidence shows that defendant's actions were lawful; 2) plaintiff, through counsel, misrepresented his physical ability to return to work; and 3) plaintiff's counsel engaged in a fraud on the Court and defendant's counsel through concealment of evidence and misrepresentation.

The evidence that defendant purports was newly discovered came from two sources, and was obtained after the parties' settlement agreement. The first of these sources was an evidence deposition of plaintiff's treating physician, Dr. Woodruff. That deposition was taken on November 28, 2006, and, according to the defendant's Rule 60(b) motion, disclosed for the first time that: 1) the doctor, rather than intending for plaintiff to seek intermittent leave under the FMLA, anticipated that he would seek an accommodation under the Americans With Disabilities Act, 42 U.S.C. 12101, et seq.; 2) he was of the view that plaintiff's condition should cause him to have stopped working; 3) in any event, plaintiff's condition precluded him from working in a dirty environment, such as that allegedly encountered in performing his service work.

The other source of the newly discovered evidence was the disclosure on November 29, 2006, that plaintiff had applied for and been granted social security disability insurance [SSDI] benefits.

The defendant also points to Dr. Woodruff's deposition for its contention that plaintiff was incapable of performing his job as of the date that defendant granted block FMLA leave and thereafter, when plaintiff returned from that leave.

Defendant's claim of concealment of evidence and fraud on the part of plaintiff's attorney is based on the nondisclosure of the application for and receipt of SSDI benefits and his alleged misrepresentation of the evidence as to plaintiff's ability to perform his job.

For the reasons that follow, defendant's Rule 60(b) motion shall be overruled. Defendant's attorney was either on notice of the "newly discovered" evidence or could, with reasonable diligence, have obtained the information that he claims justifies the motion. In addition, I find neither concealment of evidence, misrepresentation, or other misconduct on the part of plaintiff's counsel.

## Discussion

As I have previously noted:

> Although "motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal," they are "extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged." *In re August, 1993 Regular Grand Jury*, 854 F.Supp. 1403, 1406 (S.D.Ind.1994). To be sure, "a court can always take a second look" at a prior decision; but "it need not and should not do so in the vast majority of instances," especially where such motions "merely restyle or re-hash the initial issues." *Id.* at 1407. *It is not the function of a motion to reconsider* either to renew arguments already considered and rejected by a court or "*to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue*." *Id.* at 1408. Where, as is the case with much of the instant motion, "defendant views the law in a light contrary to that of this Court," its "proper recourse" is not by way of a motion for reconsideration "but appeal to the Sixth Circuit." *Dana Corp. v. United States*, 764 F.Supp. 482, 489 (N.D.Ohio 1991).

*McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D.Ohio 1996) (emphasis supplied).

### 1. Dr. Woodruff's Trial Deposition

To a substantial degree, the defendant's Rule 60(b) motion rests on the assertion that information was first learned during the November 28, 2007, trial deposition of Dr. Woodruff. That deposition was taken by plaintiff's counsel in anticipation of the forthcoming trial on plaintiff's damages. Defense counsel had not previously sought to depose Dr. Woodruff.

At that deposition, the defendant's attorney cross-examined Dr. Woodruff on three topics germane to the pending motion: 1) the doctor's understanding or expectation that plaintiff would seek an accommodation under the ADA, rather than intermittent leave under the FMLA, when he gave the plaintiff a note on March 23, 2004, restricting plaintiff to a forty-hour work week; 2) the doctor's views on plaintiff's ability to do his job as a service technician; and 3) plaintiff's receipt of disability benefits.

### a. Doctor's Expectation re. ADA/FMLA

At the deposition, Dr. Woodruff indicated that when he provided a note on March 23, 2004, restricting the plaintiff to forty hours per week work, he anticipated that the plaintiff would be applying for an accommodation under the ADA, rather than for FMLA leave. According to the defendant, Dr. Woodruff's trial deposition testimony shows that its failure, in response to that note, to offer intermittent FMLA leave to the plaintiff was appropriate, given the doctor's expectation and, even, intent.

Setting aside the fact that defendant's attorney would have learned this information had he conducted a discovery deposition of the doctor, the doctor's views as to what plaintiff should have sought or been entitled to under the law are immaterial.

As I made clear in my summary judgment decision, the law places the burden on the employer, not the employee, to ascertain the kind of leave to which the employee is entitled.

Thus, after noting in my decision that defendant did not then "appear to contest that the March, 2004 doctor's note constituted proper notice to it that plaintiff was seeking FMLA leave," I pointed out that, in any event:

> Even if it were contending that the note did not constitute such request, its challenge would not succeed.

5

> An employee seeking FMLA leave need not cite specific sections of the code or even mention the statute. *See Walton v. Ford Motor Co*., 424 F.3 d 481, 486 (6th Cir. 2005). The employee must, however, "give the employer enough information for the employer to reasonably conclude that an event described in FMLA § 2612(a)(1)(D) has occurred." *Id.* (citations omitted).
>
> In this case, defendant knew, even before receiving the doctor's note, that Verhoff had a chronic condition, as he had provided medical information to a Time Warner supervisor as early as 2002. Thereafter, his doctor's note, as other courts have held, put Time Warner on notice that he intended to take leave to which he was statutorily entitled. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 423-24 (6th Cir.2004) (doctor's note might provide sufficient notice if delivered in a reasonable time frame); *Plant v. Morton Int'l*, 212 F.3d 929, 935 (6th Cir. 2000) (finding employee provided valid notice to employer when employee submitted a doctor's note and employer knew about prior health problems).
>
> The situation here can be distinguished from cases where notice was held to be defective such as *Walton*, 424 F.3d at 486, where the plaintiff did not submit documentation from his doctor until nearly two weeks after being terminated, or *Golevski v. Home Depot U.S.A., Inc*., Nos. 04-1221, 04-1228, WL 1413099, at *6 (6th Cir. June 6, 2005), where the plaintiff was repeatedly asked to fill out certain required forms for medical leave but ignored those requests.

2006 WL 3304179, *6 n.4.

Just as an employee's ignorance his rights under the FMLA will not relieve an employer of liability for failing to provide the benefits to which the law entitles the employee, a doctor's ignorance of the law likewise provides no defense for an employer's failure to have complied with the law.

There is no merit to the defendant's contention in its Rule 60(b) motion that the doctor's testimony provides a basis for the relief that is seeks in that motion.

### b. Doctor's Views as to Plaintiff's Ability to Work

According to the defendant, the doctor's evidence deposition showed that he did not believe that plaintiff was capable of performing his duties as a service technician, or at least doing so in a "dirty environment."

Plaintiff disputes the defendant's characterization of the doctor's testimony and opinions, and contends that, to the extent that uncertainty exists as to what plaintiff could and could not do when he returned from his block leave, the fault for that circumstance lies with the defendant and its failure to have granted intermittent leave.

I reject defendant's demand for Rule 60(b) relief as to this aspect of its motion on two grounds.

First, to the extent that the doctor's testimony relates to the effect of plaintiff's skin ailment on his ability to work from March, 2004, until the date of his reinstatement, that testimony is relevant on the issue of the back pay, if any, to which plaintiff is entitled. That will be the subject of the trial as to plaintiff's damages.

That testimony does not bear, in other words, on the issue, as decided in my ruling on the counter-motions for summary judgment, as to whether the defendant wrongfully interfered with plaintiff's right to intermittent leave. I have found that it did so, and nothing in the doctor's deposition affects that determination as to defendant's liability.

Second, plaintiff's response to the defendant's contention as to the doctor's testimony about his ability to work – namely, that the defendant's misconduct may well be found to have contributed to any such inability – is well-taken, at least to the extent that it is for the jury to determine whether the plaintiff could have worked, and thus is entitled to back pay for part or all of the period between his firing and reinstatement.

Defendant's Rule 60(b) motion is not meritorious with regard to its claim that plaintiff's doctor believes that he was not capable of working at all, or could do so only under restrictions beyond the forty-hour/week limitation recited in the March 23, 2004, note.[3]

## 2. Non-Disclosure of Plaintiff's SSDI Benefits

Defendant seeks Rule 60(b) relief, in part, on the basis that plaintiff's counsel failed to respond to defendant's December, 2004, request for production regarding any "benefits" that the plaintiff may have received after the defendant fired him. As noted, plaintiff's counsel first gave direct indication and specific reference about plaintiff's SSDI benefits during a November 29, 2006, telephone conversation with defendant's attorney.

It is apparent from his cross-examination the day before at Dr. Woodruff's November 28, 2006, evidence deposition that defendant's attorney knew that Dr. Woodruff's records reflected, in part, that plaintiff may have sought and obtained some form of disability benefits.

On that subject, the doctor's notes state that the plaintiff was "considering disability" [December 16, 2004], "copies [had been] sent to [the] Bureau of Disability Determination" [June 6, 2005], and plaintiff was "now on 100% disability" [October 25, 2005]. [See Woodruff Dep. at 38-40].

The defendant does not allege that these notes were not provided to it in a timely and proper manner. These records, were, accordingly, available to defendant's attorney before the counter-motions for summary judgment were filed and decisional. They appear, though to have escaped his attention: he either did not notice or ignored them.

---

[3] I note that in his opposition to the Rule 60(b) motion, plaintiff's counsel represents that plaintiff's duties were essentially those of a lineman, which did not expose him to a "dirty environment," as referenced by Dr. Woodruff.

Whichever occurred, it does not relieve counsel of his failure to have been more attentive to what was available to him: before summary judgment practice, counsel was on notice that *someone* had found the plaintiff to be 100% disabled at some point after he left the defendant's employ.

Given that information, counsel should have inquired further. He could, for example, have contacted plaintiff's counsel and asked what was meant by the notes – especially the reference to "now on 100% disability." Had plaintiff's counsel been asked, I have no doubt whatsoever that he would have realized his oversight with regard to the SSDI-related materials and provided those documents without further ado.

Alternatively, Time Warner's counsel could have deposed Dr. Woodruff before the discovery period closed.[4] Instead, he first questioned Dr. Woodruff at his trial deposition about ten days before the scheduled date of the damages trial.

While plaintiff's counsel can be faulted for his oversight in not producing the social security application and related records, that failure does not excuse the more consequential failure of the defendant's attorney to have responded to information that had been produced, and which alerted, or should have alerted him, had he paid attention to that information, about plaintiff's apparent receipt of disability benefits from the state.

---

[4] Defense counsel represents that he declined to conduct a discovery deposition of Dr. Woodruff because he understood that any reference to disability in the doctor's notes involved an application by the plaintiff for disability benefits under his wife's employer's benefits program. The consequences of that erroneous assumption – which completely ignored the reference to the Bureau of Disability Determination [*a state agency, not an insurance company*] in the doctor's records – cannot be shifted to the plaintiff.

The "newly discovered" evidence that defense counsel first learned about at the post-motion/post-settlement/eve-of-trial evidence deposition could, with a modest amount of diligence and attentiveness, have been learned well before defendant's motion for summary judgment was filed, the settlement conference was held, and before trial was to occur. The fault for not learning about that evidence sooner lies with defense counsel, and thus deprives the defendant of any claim for relief on that aspect of the Rule 60(b) motion.

### 3. Concealment and Fraud by Plaintiff's Attorney

Much, if not all of defendant's complaints about alleged concealment of evidence and fraud by plaintiff's counsel have been addressed in the foregoing discussion about Dr. Woodruff's deposition and the failure to produce the SSDI-related information and documents. I will, nonetheless, address the specific contentions stated, or restated in plaintiff's Rule 60(b) motion under the rubric of concealment and fraud.[Doc. 92, at 12-13].

1. Failure to produce SSDI-related information.

I find no basis for concluding that plaintiff's counsel deliberately withheld this information.

2. Failure to reference two letters by defendant's in-house counsel relating to plaintiff's EEOC complaint.[5]

In response to defendant's objection to use of these letters, and its ensuing motion in limine, plaintiff's counsel, if memory served, informed me and opposing counsel that it would not seek to

---

[5] Time Warner previously filed a motion in limine to restrict plaintiff's use of two letters written by Time Warner attorneys and sent to the EEOC. My recollection is that Verhoff agreed not to introduce the letters as evidence, and in any event, the issue is moot as the letters relate only to liability, which has already been established. Also moot, for the same reason, is plaintiff's motion in limine regarding stipulations of fact and law. Finally, Verhoff filed another motion in limine to restrict Time Warner's use of its employee handbook as evidence, but I shall reserve judgment on the issue pending trial.

use or introduce the letters. In any event, I see nothing improper in making an allegation in a complaint and then, for whatever reason, not following up on that allegation in later motion practice.

3. Misuse of photos of plaintiff's skin condition.

Plaintiff's counsel points out that, contrary to the claim of defendant counsel in his motion, the plaintiff never testified that the particular photos were an "aberration." In any event, there is evidence in the record that light treatment following defendant's firing of plaintiff has enabled his condition to improve.

I perceive no misconduct of any kind on the part of plaintiff's counsel with regard to these photos: they show what they show as of when they show it. If offered to the jury, the parties can draw whatever inferences and make whatever arguments they think useful and appropriate.

4. Misrepresentations re. Dr. Woodruff's notes.

Whatever Dr. Woodruff understood or anticipated about plaintiff's request for accommodation under the ADA is not, as discussed above and in my summary judgment decision, utterly immaterial. The notes about which defendant complains were available to it; nothing was concealed, and no misconduct relative to those notes is apparent.

5. Claim for back pay while receiving SSDI benefits.

As determined in a ruling to be filed contemporaneously with this opinion, the collateral source doctrine precludes defendant's effort to set SSDI benefits off against any award of damages, and no evidence will be allowed with regard to plaintiff's application for or receipt of such benefits. There is no merit to defendant's complaints about the damages worksheet.

6. Misinformation about dates re. SSDI benefits.

The documents, once produced, speak for themselves. I detect no effort on the part of plaintiff's counsel to somehow mislead the defendant's attorney or the court with regard to what they say or mean.

In sum, the defendant's claim in its Rule 60(b) motion that the plaintiff and his attorney "played games" with regard to plaintiff's FMLA rights is unfounded. It is the defendant, not the plaintiff or his lawyer, who "played games" under the statute when it declined, as required by law, to offer intermittent leave.[6]

### 4. Defendant's Motion Raises No Justiciable Issue

When the defendant agreed during the course of settlement negotiations on the eve of the damages trial to permit the plaintiff to return to work it thereby acquiesced in my decision as to its

---

[6]

Immediately after the December 1, 2006, phone conference, defense counsel filed a motion for sanctions for the failure to have provided the SSDI-related documents. [Doc. 76]. Because I find that plaintiff's counsel negligently, rather than willfully, failed to provide the SSDI-related documents, and, further, that plaintiff's counsel otherwise engaged in no misconduct, defendant is not entitled to an award of sanctions.

A final observation: defendant's Rule 60(b) motion comes too late to do the good for defendant that it seeks. Instead of waiting until after agreeing to reinstate the plaintiff and make an initial payment of back pay, the defendant's attorney should have sought leave to file a Rule 60(b) or similar motion promptly on learning what he claims to have learned for the first time from Dr. Woodruff's deposition and learning, as well, that plaintiff sought and received SSDI benefits. Alternatively, and at the very least, defense counsel should have asked for a continuance to straighten out the problems that appeared to have surfaced shortly before the trial date.

Had he done so, any prejudice he now attributes to the delayed disclosure of plaintiff's SSI benefits could and would have been avoided. But no relief of any kind was sought until the first version of the pending Rule 60(b) motion was filed on January 9, 2007 – more than a month – as already noted, after the agreement to reinstate the plaintiff ended any dispute as to defendant's liability under the FMLA.

12

FMLA liability. That agreement, while oral, was not accompanied by any reservation of any right to continue to challenge my decision or its liability under the FMLA.

As of that point, there no longer was a case or controversy about liability.

Any doubt in that respect was foreclosed by the acknowledgment in the Agreed Order entered December 6, 2006, that the plaintiff was to be deemed the prevailing party.

In the alternative to the foregoing discussion of the grounds for finding the Rule 60(b) without merit, the motion is, therefore, subject to being overruled on the basis that it presents a justiciable case or controversy under Article III of the Constitution.

### 5. The Plaintiff is Entitled to an Award of Attorneys' Fees

I have made clear in the past that "counsel who in the future file unfounded, unmerited, and unsuccessful motions for reconsideration simply because they disagree with a ruling, decision, or order should expect to be to be sanctioned to the full extent permitted under Rule 11 and 28 U.S.C. § 1927." *Andersons, Inc. v. Consol, Inc*., 208 F.Supp.2d 847, 850 (N.D.Ohio 2002).

Defendant's motion under Rule 60(b) is without merit and should never have been brought. The consequences of the failure by plaintiff's counsel to provide the SSDI-related information and documents could have been avoided had defendant's attorney been more attentive to what was already available.

There is likewise no merit to the defendant's contention that plaintiff's counsel misled defense counsel or this court.

In view of the Agreed Order and settlement as to liability that it memorialized, defendant's motion cannot be granted, as no case or controversy exists between the parties as to defendant's

13

liability for interfering with plaintiff's rights under the FMLA. An award of fees to plaintiff for having to respond to this motion is entirely appropriate.

One final observation: aside from its lack of substantive merit, defendant's motion presented other, and unique problems. In addition to being filed late, it was submitted in two versions – the original, and then a "corrected" version. As noted by plaintiff's motion to strike "corrected" versions of three motions filed by the defendant [Doc. 93], neither the Federal Rules of Civil Procedure nor our Local Rules authorize filing so-called corrected versions of motions – especially where the "corrected" version does a lot more, as defendant's "corrected" motions did, than tidy up a couple of typographical errors or correct a mis-citation to a case or the record. Instead, defendant first filed counsel's first draft and then filed a second draft.

The procedural tangle created by defendant's mode and method of filing its motions, and especially by the unwarranted filing of "corrected" versions, provides further justification, if any were needed, for an award of sanctions for the improper filing of the Rule 60(b) motion.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant's motion for relief under Fed. R. Civ. P. 60(b) be, and the same hereby is denied;

2. Defendant's request for sanctions be, and the same hereby is denied;

3. Plaintiff's motion to strike corrected versions be, and the same hereby is overruled as moot; and

4. Attorneys fees be, and the same hereby are awarded to plaintiff as a sanction under Fed. R. Civ. P. 11, and 28 U.S.C. § 1927, and this court's inherent power to sanction misconduct; leave granted to plaintiff to file statement on or before April 2, 2007, of fees incurred as a result of defendant's Rule 60(b) motion; defendant's opposition, if any, to the amount therein claimed to be filed by April 20, 2007; plaintiff's reply to be filed by April 30, 2007. The Clerk shall set this case for a telephonic scheduling conference to set a date for trial on the issue of plaintiff's damages.

So ordered.

                                              s/James G. Carr
                                              James G. Carr
                                              Chief Judge