IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis Verhoff,                                  Case No. 3:05CV7277

       Plaintiff

    v.                                            ORDER

Time Warner Cable, Inc.,

       Defendant

This is an employment discrimination case in which the plaintiff, Dennis Verhoff, claimed that his former employer, Time Warner Cable [Time Warner] terminated him in violation of the Family Medical Leave Act, 29 U.S.C. §2601. A jury returned a verdict in plaintiff's favor and awarded him damages of $56,617.50.

Pending is defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for a New Trial or Remittur. [Doc. 171].

For the reasons that follow, the defendant's motion shall be denied.

**Background**

Plaintiff worked for Time Warner as a Service Technician, troubleshooting and repairing subscribers' problems with their cable service. The company's response to customer problems has to be as prompt as possible; Service Technicians must, therefore, be available nights and weekends, and not just during conventional working hours.

Plaintiff is afflicted with a severe eczema, which is often uncomfortable and frequently affects his tolerance to dirt and ability to rest. For years the company had informally accommodated

plaintiff by permitting him – as it did not permit other Service Technicians – to work only during conventional business hours. Unlike them, he was not required to work overtime.

Following a change in supervisors, plaintiff was informed that he had to work overtime. Thus, the former informal accommodation was discarded.

In response, plaintiff presented a doctor's note restricting him to a forty-hour week. As a matter of law, as previously held [Doc. 52], this note constituted a request for FMLA leave. This despite its lack of specific reference to the FMLA, triggered an obligation on the company to determine whether the plaintiff needed "block" or "intermittent" leave. A person on intermittent FMLA leave has time off periodically. A person on block leave takes his or her FMLA leave in larger segments.

Had the company granted plaintiff intermittent leave, his schedule could have been adjusted to continue to permit him to work no more than forty hours per week. [Indeed, he could have been scheduled to work nights and weekends, provided his weekly hours were forty or less].

The company did not inquire what would be best; nor did it consider returning the plaintiff to his former forty-hour week. Instead, it granted him block leave.

On his return, plaintiff was informed that he had to work overtime, just like every other Service Technician. Determining that the plaintiff was not able to do so, the company fired him.

Thereafter, according to the plaintiff's testimony, he undertook unsuccessfully to secure employment. About a year after his termination, plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits claiming that as of April 26, 2004, he was totally disabled and unable to work because of his eczema. He was awarded benefits.

At a settlement conference on the eve of the trial date, Time Warner agreed to reinstate the plaintiff and pay back pay from May 5, 2004 [the start date for his unpaid FMLA leave] until the start date [October 1, 2004] of his SSDI benefits. This was expressly not a settlement "agreement," as the issue of damages remained to be adjudicated.

The issue at trial and which the jury decided in plaintiff's favor was whether plaintiff was entitled to back pay from the date his SSDI benefits began until he resumed work on November 27, 2006, pursuant to the reinstatement agreement between the parties.

Time Warner's pending motion contends that the jury erroneously determined that: 1) plaintiff failed satisfactorily to explain the alleged discrepancy between his SSDI application [which claimed inability to perform any substantial gainful employment] and his claim under the FMLA that he could have performed the essential functions of his job if granted intermittent leave; and 2) plaintiff had mitigated his damages. Time Warner also complains about various allegedly erroneous rulings by the undersigned. If its motion for judgment as a matter of law or new trial is not granted, Time Warner requests a remittur of the damages award.

## 1. Motion for Judgment as a Matter of Law: [Mitigation of Damages]

The plaintiff testified about efforts he made to obtain employment following his firing by the defendant. Defendant argued that plaintiff had not mitigated his damages, and sought to support its argument with various contentions, many of which it renews in its pending motion.

In returning its verdict, the jury necessarily concluded that defendant had failed to meet its burden of proving a lack of mitigation. The record supports that finding, despite defendant's contentions at trial and now to the contrary.

3

One of the defendant's principal contentions was that plaintiff failed to document the contacts that he testified he had made. Failure to provide documentation is not the same as failure of proof. If sufficiently credible and persuasive, a plaintiff's testimony about his job search suffices, without more, as a basis for a favorable finding regarding mitigation. *See Munoz v. Oceanside Resorts, Inc.*, 223 F. 3d 1340, 1347-48 (11th Cir. 2000) (finding evidence of mitigation sufficient although plaintiff had at one point stopped noting his job inquiries);.*Evans v. State of Conn.*, 967 F.Supp. 673, 681-82 (D.Conn. 1997) (rejecting defendant's claim that proof of mitigation was insufficiently documented).

Defendant contends that some of the contacts on a list provided by the plaintiff should have been excluded from the jury's consideration. Allowing plaintiff to testify, despite defendant's objections, about: a job fair; positions that may have been at the same company; and a company located outside Ohio, was not improper. Counsel cross-examined the plaintiff about these items and it was up to the jury to consider this evidence with the balance of the record.

Defendant contends that plaintiff testified about only one "contact" during his job search. That contention does not accurately reflect plaintiff's testimony in its proper context. That he could not remember contacts was before the jury for its consideration. That testimony does not justify a finding of lack of mitigation.

Plaintiff testified that he applied for several positions, but was unable to get a job. The law does not demand that he have gone into another line of work, accept a demotion or take a demeaning position. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982). Reasonable diligence does not require the employee "to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so." *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir.1989).

I conclude that the defendant's proof of a failure to mitigate was insufficient to undercut the jury's verdict.

I also agree with plaintiff that the record did not show, as defendant contends, that plaintiff abandoned his job search by applying for SSDI or otherwise. Plaintiff testified that he did not give up looking for work after obtaining social security benefits. That testimony was there for the jury to believe or not; that it appears to have done so refutes that aspect of defendant's abandonment contention.

To the extent that defendant bottoms its claim of abandonment [and thus, failure to mitigate] on the receipt of SSDI benefits, defendant appears to be contending that, under *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1999), plaintiff's alleged failure to "provide a sufficient explanation for the inconsistency between his SSDI application statements . . . with his FMLA interference claim" constitutes abandonment of all efforts to secure work. [Doc. 170].

The gist of this contention was encapsulated in a defense proposed jury instruction. I declined to give that instruction; by necessary implication that means that I disagreed with defendant's argument. And I still do: the burden was and remained on the defendant to prove lack of mitigation. Once plaintiff presented evidence of what he did, defendant could cross-examine and present evidence about what he didn't do.

In any event, the law does not demand, on pain of forfeiting his claim for damages, that the plaintiff reconcile any discrepancy between his application for SSDI benefits and his ability to perform the essential functions of his job. That the plaintiff sought and obtained such benefits was known to the jury, and it could take whatever plaintiff said about his doing so, along with all the other evidence of record, into account as it deliberated.

Defendant appears to claim that it proved that other equivalent positions were available. Aside from the dubious nature of the alleged "proof" [i.e., plaintiff's testimony that he could have applied for a job in Lima, though there was no evidence that such job was available], the jury's verdict shows that it rejected any such "proof." That the defendant does not think that it should have done so is not a basis for setting aside its verdict.

The jury concluded that the evidence supporting its claim that the plaintiff failed to mitigate did not suffice to meet the defendant's burden of proof. Viewed as a whole, the record enabled a rational trier of fact to reach that conclusion.

This conclusion is not undone by defendant's effort to proffer evidence.

At trial, the defendant sought to introduce evidence that the plaintiff had not made some of the inquiries that about which he testified. I sustained plaintiff's objection to that evidence. I also told the defendant that it could make a proffer of that evidence to preserve the record for appeal.

Following the verdict, the defendant continued its quest for witnesses and evidence to show that the plaintiff was exaggerating, lying, or both in his testimony about his job search. Defendant wanted to use those witnesses and evidence to support its demand to set aside the verdict and gain a new trial.[1]

---

[1] I wish clearly to express my view that it is probably fairly likely that such "evidence" as the defendant has generated *post hoc* would be neither probative nor persuasive; at least it didn't sound that way when it was being described during a telephone pretrial conference at which I told the defendant's attorney that he would not be permitted to offer that material. I simply do not want the Court of Appeals to infer that, if that evidence were to have come into the record, it might possibly somehow cast some sort of shadow over the verdict.

That effort is entirely improper. The time to have done that work was well before the discovery period closed, rather than long after the case has been submitted to the jury.[2]

In light of all the foregoing, I find no basis for setting aside the jury's verdict by granting defendant's motion for judgment as a matter of law. The record shows that the jury had an ample basis for its verdict, both as to plaintiff's damages and the defendant's failure to meet its burden of proof as to lack of mitigation.

### 2. Motion for a New Trial
### [Trial Errors, Etc.]

Defendant was entitled, as all parties are, to a fair trial. But any failure to have had a perfect trial, where all rulings were completely correct and irrefutable, and my performance was infallible, is not, without a showing of prejudice, a basis for trying once again at a new trial.

Defendant claims that sufficient prejudice resulted from erroneous evidentiary rulings, erroneous jury instructions and unrestrained or uncorrected attorney misconduct to entitle it to a new trial. I disagree.

### A. Evidentiary Rulings

The defendant contends, first, that I improperly excluded testimony by thirteen witnesses whom it first indicated that it wanted to call less than a week before trial. These were individuals who, defendant represented, would testify that either plaintiff had not contacted them or their firms

---

[2]

Defendant has completed the proffer he was to have made at trial [but was allowed by me to postpone] of the evidence that I excluded. The proffer consists of ten affidavits. The defendant wants me to weigh those affidavits in the balance as I consider his motions.

I decline to do so. The motion is to be evaluated in light of the evidence of record. While a party may argue at this point in a proceeding that evidence was improperly admitted or excluded with substantially adverse prejudicial impact, that does not mean that such evidence – which was not before the jury – can properly be considered as though it had been admitted at trial.

7

about a job, or they had no record of such contacts. I ruled that, given the manifest delay in identifying these individuals as potential witnesses, and the fundamental unfairness of trying to conduct discovery that close to the start of the trial, I wound not allow the witnesses to testify.

Defendant's attorney acknowledged prior to my ruling that he had been in contact with several of these individuals several months earlier – i.e., in sufficient time, if he didn't want to engage in trial by ambush, to tell plaintiff's counsel about them, and to give plaintiff's counsel an opportunity to learn and evaluate their anticipated testimony.

Defendant's attorney made a deliberate choice to mask his intent to use these witnesses, and not to disclose their contact information, etc.

The wound the defendant's attorney inflicted on his case was self-inflicted. By disregarding his disclosure obligations and electing to do as he did, he ran the risk, which should have been obvious to any attentive and competent counsel, that his ploy would not work. Having bet on deceit, he cannot complain when that bet was called, and he paid the consequences.

I reject out of hand any suggestion that defense counsel only came to understand the possible usefulness of these late-coming witnesses shortly before trial. Mitigation of damages – the issue to which the testimony of these witnesses was to have related – is among the most commonly disputed issues in any employment discrimination case. Waking up to that issue as trial was about to begin simply could not have occurred. Tending to the collection of evidence about mitigation should be one of the first things defense counsel takes care of, not the last. This is so, even if counsel is confident that an adverse judgment on liability is unlikely.[3]

---

[3]

To the extent that defense counsel suggests that I should have granted a continuance to enable plaintiff's counsel to conduct discovery as to these witnesses, he errs. A court's schedule is not mutable to suit counsel's desire to avoid the consequences of his own tactical errors. To have

The defendant next complains that I erred to its prejudice when I refused to permit it to play excerpts of the deposition of Dr. Woodruff, plaintiff's treating physician. The defendant's putative purpose in wanting to do so was to show that the condition of plaintiff's eczema was at various times so severe that he could not have worked [and thus was not entitled to damages for such periods].

I declined to allow the proffered testimony because the plaintiff never got a job offer. Thus, any opinion that the doctor could offer as to whether the plaintiff's condition at any given time precluded him from doing a particular job would have been speculative. Instead, the most that Dr. Woodruff said was that he would have had to examine the plaintiff. That doesn't mean that any such examination, when set in the context of a particular job under specific conditions, would have kept the plaintiff from returning to work.

I continue to believe that my ruling was correct.

In any event, Dr. Woodruff's testimony that plaintiff's condition became severe on two occasions does not show that he was unable to work for the entire period for which back pay was sought. Dr. Woodruff, moreover, was not asked about the effect of intermittent FMLA leave – such as would have kept the plaintiff employed by Time Warner – on any opinion he might have had, had he been presented with specific circumstances at specified times.

### B. Jury Instructions

---

continued [again] the trial date would have been to reward the defendant's attorney for his misconduct.

I note, moreover, that plaintiff's counsel has done a thorough job of showing that the defendant might have been worse off if I had granted the requested continuance, allowed discovery to occur and then permitted these witnesses to testify. *See* Doc. 178 at 16-26. Because I am confident that my refusal to let defendant's attorney try to spring his trap was correct, I need not analyze what, if any, prejudice was caused to the defendant's case. I leave it to the reader to draw his or her own conclusions from reading plaintiff's brief in opposition to the defendant's motion. *Id.*

Defendant claims that I should have instructed the jury that the plaintiff had the burden of explaining away the putative inconsistency between his SSDI application and obligation under the FMLA to show that, but for the defendant's violation of that statute, he could have performed the essential duties of his job. I find no basis for imposing that burden on the plaintiff in either *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), or elsewhere. I am not persuaded that I erred in rejecting the defendant's request for that instruction.

Defendant now objects to, as it did not at trial, Instruction No. 7, relating to collateral source. Matters not raised at trial are waived at this stage. I find no plain error in the decision to give this instruction.

### C. Attorney Misconduct

Defendant recites a laundry list of things that plaintiff's counsel did, or failed to do, that constituted prejudicial misconduct. I find no merit in any of these contentions.

To the extent that defendant complains about alleged misstatements in statements and arguments to the jury, no error in that regard has been preserved. In any event, I neither recall nor perceive in the defendant's post-trial brief any instances in which plaintiff's counsel can fairly be described as misstating the record.

Even if there were misstatements, they could not have caused prejudice to the defendant. The jury was cautioned at the outset and in the final instructions that the statements of counsel were not evidence, and they were to decide the case solely on the evidence. Trial was fairly short, and there is no likelihood that the jurors forgot those instructions.

Otherwise, defendant's complaints spring from its disagreement with my interpretation and application of the *Cleveland* decision. That plaintiff's counsel followed my rulings as to that

decision, and either said or did not say things to the jury that would have contradicted those rulings [and my instructions on the issue of mitigation], he can hardly be charged with having acted improperly.

I find no error in how plaintiff's counsel conducted himself during the trial.[4]

### 3. Motion for Remittur

Defendant contends that the jury's verdict was excessive and unreasonable. It bases these contentions on a renewal of its claim – rejected above – that it proved that plaintiff failed to mitigate his damages.

The second basis on which defendant seeks a reduction in the award of damages is plaintiff's receipt of SSDI. Here, again, it bases its contention on arguments refuted earlier in this opinion, at trial and during pretrial proceedings.

There are no grounds for reducing the jury's decision as to the damages caused to the plaintiff by the defendant's failure to comply with the FMLA.

### Conclusion

There is no merit to any of the grounds on which the defendant seeks to have the jury verdict set aside and obtain a new trial.

---

[4]

To a remarkable degree this case was marked by frequent allegations on the part of defendant's counsel that plaintiff's counsel had engaged in misconduct. *Ad hominem* allegations are no substitute for preparation, evidence, and persuasive argument based on facts, not speculation, conjecture, and innuendo.

Given the extent of such allegations in the pleadings and record of this case – all of which are open to public view – I wish to make clear that I am firmly convinced that there is no merit to any of those allegations. I make this observation to avoid any temptation on the part of unscrupulous counsel or others to point to such unfounded accusations as somehow impugning the character or competence of plaintiffs' counsel.

11

It is, therefore,

ORDERED THAT defendant Time Warner Cable's motion for judgment as a matter of law or in the alternative a new trial [Doc. 171] be, and the same hereby is overruled.

So ordered.

> s/James G. Carr
> James G. Carr
> Chief Judge